UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SARA CLEMENTS,<br><br>Plaintiff,<br><br>v.<br><br>IHOP RESTAURANTS, LLC,<br>MR. STAX, INC., MILFORD<br>PANCAKES, INC., TIM MULSON, and<br>AVI SUNNADENIYAGE,<br><br>Defendants. | CIVIL ACTION NO.: |

# COMPLAINT

## Parties

1. Sara Clements ("Ms. Clements") is an adult resident of Woonsocket, Rhode Island.

2. Defendant IHOP Restaurants, LLC, is a corporation organized under the laws of Delaware and is registered to do business in Massachusetts as foreign corporation with the Secretary of the Commonwealth. Its principal office is located at 450 N. Brand Blvd, 7th Floor, Glendale, California 91203.

3. Defendant Milford Pancakes, Inc., is a corporation organized under the laws of Nevada and is registered to do business in Massachusetts as a foreign corporation with the Secretary of the Commonwealth. Its principal office is 25060 Avenue Stanford, Suite 200, Valencia, California 91355. It has a restaurant location in Massachusetts, located at 17 Medway Road, Milford, Massachusetts 01757.

4. Defendant Mr. Stax, Inc., is a corporation organized under the laws of Nevada and is registered to do business as a foreign corporation in Massachusetts with the Secretary of

1

the Commonwealth. Its principal office is 25060 Avenue Stanford, Suite 200, Valencia, California 91355. It has a Massachusetts office located at 80 Randall Street, North Easton, Massachusetts 02356.

5. Upon information and belief, Defendant Tim Mulson ("Mr. Mulson") is an employee of IHOP Restaurants and Milford Pancakes in Milford, Massachusetts and is residing in Massachusetts and was Ms. Clements' District Manager.

6. Upon information and belief, Defendant Avi Sunnadeniyage ("Mr. Sunnadeniyage") was an employee at IHOP Restaurants and Milford Pancakes, is residing in Massachusetts, and at all relevant times was Ms. Clements' direct Supervisor and the General Manager of the IHOP restaurant located in Milford.

### Exhaustion of Administrative Remedies

7. Ms. Clements filed her charge for discrimination based on sex, sexual harassment, hostile work environment, and retaliation against the Defendants with the Massachusetts Commission Against Discrimination ("MCAD") within the statutorily required amount of time following the actionable conduct.

8. Ms. Clements complied with all MCAD complaint procedures prior to filing this Action in the U.S. District Court.

9. Ms. Clements withdrew her charges from the MCAD after 90 days in order to file a private right of action in the U.S. District Court pursuant to and in compliance with G.L. c. 151B § 9.

### Jurisdiction and Venue

10. This Court has Federal Question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S. Code § 1331 because Defendants, jointly and severally, have violated

    Title VII of the Civil Rights Act of 1964 by discriminating against and retaliating against the Plaintiff, Sara Clements.

11. This Court has general personal jurisdiction over IHOP Restaurants, LLC, because it is a foreign corporation operating in the Commonwealth of Massachusetts and because the Acts and omissions of the IHOP Restaurants, LLC, and/or its agents that gave rise to this Complaint also occurred in the Commonwealth.

12. This Court has general personal jurisdiction over Mr. Stax, Inc. because it is a foreign corporation operating in the Commonwealth of Massachusetts and because the Acts and omissions of the Mr. Stax, Inc. and/or its agents that gave rise to this Complaint also occurred in the Commonwealth.

13. This Court has general personal jurisdiction over Milford Pancakes, Inc. because it is a foreign corporation operating in the Commonwealth of Massachusetts and because the Acts and omissions of the Milford Pancakes, Inc. and/or its agents that gave rise to this Complaint also occurred in the Commonwealth.

14. This Court has general personal jurisdiction over Tim Mulson because on information and belief, he is a resident of the Commonwealth and has a usual place of business in the Commonwealth. The acts and omissions of Tim Mulson which gave rise to this Complaint also occurred in the Commonwealth

15. This Court has general personal jurisdiction over Avi Sunnadeniyage because on information and belief, he is a resident of the Commonwealth and has a usual place of business in the Commonwealth. The acts and omissions of Avi Sunnadenyage which gave rise to this Complaint also occurred in the Commonwealth

16. This Court has supplemental jurisdiction over Plaintiffs' Massachusetts State Law Claims pursuant to 28 U.S. Code § 1367(a) because the claims arise from the same case, controversy and common nucleus of fact as the federal claim: namely, the Defendants' discrimination against Ms. Clements

17. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) and (c) as a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

**Factual Allegations**

18. IHOP Restaurants, Milford Pancakes, and Mr. Stax, operate an IHOP Restaurant in Milford Massachusetts (hereinafter the "Milford IHOP").

19. Ms. Clements was hired to work at the Milford IHOP on or about December 8, 2018.

20. Ms. Clements, a seasoned and experienced server and manager, was brought on as the Assistant General Manager, and was supposed to start General Manager training as soon as the new location was running smoothly, in approximately June 2019. Throughout the store opening process, Ms. Clements was introduced to all the corporate leaders as "the future General Manager of this location."

21. Because this location was a newly-opened IHOP, the entire staff underwent a period of training.

22. Present for the training were representatives from the corporate office, and, relocated from an IHOP in California, the new General Manager of the Milford IHOP, Mr. Sunnadeniyage.

23. On the first day Ms. Clements and Mr. Sunnadeniyage met, he asked for her phone number.

24. On the second day, using company records, he researched where Ms. Clements lived and mentioned to her that he lived in the same apartment community, only one street away from her.

25. Once the representatives from the corporate office left, Mr. Sunnadeniyage began touching Ms. Clements inappropriately.

26. Always when others were not around, and never in view of the store cameras, Mr. Sunnadeniyage would rub Ms. Clements' shoulders, touch her waist, approach her when she was alone in the employee coat room, and on two occasions groped her inner thigh.

27. Mr. Sunnadeniyage then began regularly questioning Ms. Clements about what she did after work, where she hung out, where she liked to drink, etc.

28. On multiple occasions Mr. Sunnadeniyage would call Ms. Clements right after she left work and tell her that he missed her already.

29. After the first two weeks of training, Ms. Clements had worked at total of 186 hours, but due to a clerical error, was only paid fifty dollars ($50.00).

30. In seeking to get her paycheck corrected, the IHOP Vice President, Sal, questioned Ms. Clements about how she spent her money, and why she didn't have enough, and laughed about her lack of pay with other staff, including Mr. Sunnadeniyage.

31. Sal then started lecturing Ms. Clements on how she needed to manage her money better, and telling her how his wife, a waitress, could always save and put aside funds.

32. Eventually Ms. Clements was paid the correct amount.

33. The sexual harassment became so intolerable and pervasive that Ms. Clements, via phone, alerted her District Manager, Tim Mulson, in the beginning of February 2019.

34. Mr. Mulson told her to lay low and that he would take care of it.

35. Days after this phone conversation, Mr. Sunnadeniyage pulled Ms. Clements into the restaurant office, locked the door, and stared yelling at her, telling her that "they would never believe her" that "she would lose her job," "she's wasting her time complaining," and that she should consider what would happen to her two young children, aged five and one, if she got fired.

36. Another employee tried to interrupt Mr. Sunnadeniyage's tirade, but he simply unlocked the door, yelled at the other employee, relocked the door, and continued to threaten Ms. Clements.

37. Ms. Clements left the restaurant in tears.

38. After the locked office incident, Ms. Clements made multiple complaints to Mr. Mulson about Mr. Sunnadeniyage's threatening behavior.

39. Mr. Mulson told Ms. Clements not to make waves and that Mr. Sunnadeniyage would be transferred to another store in June, and she would be promoted to General Manager.

40. He told her that if she tried to get away from Mr. Sunnadeniyage now, and transfer to another store, she'd never get promoted.

41. Eventually, on or about February 22, 2019, Ms. Clements convinced Mr. Mulson to meet her at the Milford IHOP store location for a personal meeting about Mr. Sunnadeniyage, with the intention of reporting Mr. Sunnadeniyage's behavior yet again and finally requesting a transfer to another store.

42. Mr. Mulson agreed to meet with her at the Milford IHOP the next day.

43. At the end of her shift on or about February 23, 2019, Mr. Mulson called Ms. Clements into the Milford IHOP office, where Mr. Sunnadeniyage was already present.

44. Ms. Clements was not comfortable with Mr. Sunnadeniyage present, and had to request that he not be present for the meeting.

45. Mr. Mulson attempted to continue the meeting with Mr. Sunnadeniyage present under the guise of fixing Ms. Clements's and Mr. Sunnadeniyage's disagreements.

46. Ms. Clements continued to protest Mr. Sunnadeniyage's presence, and Mr. Sunnadeniyage eventually left.

47. After Mr. Sunnadeniyage left, Mr. Mulson talked Ms. Clements down and told her if she went over his head and reported her complaints to upper management it would ruin her chances of ever being promoted.

48. He told her it wasn't worth losing her job, because no one would believe that Mr. Sunnadeniyage was capable of the things she was claiming he had done.

49. He advised her against reporting anything, reasoning that she needed to keep her job for her children's sakes.

50. Prior to this meeting, Mr. Sunnadeniyage always scheduled Ms. Clements to be the one to manage the store when he had a day off. On these days, Ms. Clements made seventeen dollars ($17.00) an hour. She was also often scheduled as shift manager, and made $5.35 per hour, plus tips, as shift manager instead of the regular $4.35 per hour when she worked as just a server.

51. After this meeting, Mr. Sunnadeniyage never scheduled Ms. Clements to manage the store when he was out, he never scheduled her as shift manager, and he began to drastically reduce her hours, all of which resulted in a severe reduction in Ms. Clements's income.

52. During this time, Ms. Clements had a death in her family and called off work unexpectedly.

53. While she was out, the Milford IHOP was inspected.

54. In order to pass inspection, at least one employee with Safe Serve Certification must be present at the time of inspection.

55. There were only two employees at the time with Safe Serve Certification, and Ms. Clements was one of them.

56. The manager on duty that day was an employee named Lori Bublos ("Ms. Bublos"), who did not have Safe Serve Certification.

57. Once informed of the problem by Ms. Bublos, Mr. Sunnadeniyage came into the Milford IHOP, made a new badge with Ms. Clements' name on it for Ms. Bublos to wear. Ms. Bublos wore the name tag and impersonated Ms. Clements the entire day, forging Ms. Clements' signature on all the inspection reports, so the restaurant would pass inspection.

58. When Ms. Clements found out that this had happened, she was very upset and wanted to talk to Human Resources.

59. However, she was discouraged to report the incident by her supervisors, including Mr. Sunnadeniyage and Mr. Mulson.

60. Twice during the week of March 18, 2019, Mr. Mulson tried on two different occasions to invite Ms. Clements to come into work to open the store safe for him, insisting that he needed her to do it for him.

61. Feeling skeptical of the whole situation, Ms. Clements refused to visit the store to open the safe because she knew Mr. Mulson knew the safe combination and couldn't understand why he needed her to open it for him.

62. Eventually, the situation became untenable, and Ms. Clements finally made an appointment to speak with Human Resources regarding the inspection incident, and regarding Mr. Sunnadeniyage and Mr. Mulson's behavior and treatment of her.

63. The meeting with Human Resources took place on or about Thursday, March 21, 2019.

64. The night before the meeting, a woman named Jennifer from Human Resources called Ms. Clements to tell her that Mr. Mulson **had** to be present at the meeting.

65. Ms. Clements protested, but her request to have him left out was denied.

66. Then, in front of the man enabling her sexual harassment by not addressing the concerns she had raised to him on multiple occasions, Ms. Clements laid out the facts as stated above in this Complaint.

67. The next day, on or about Friday, March 22, 2019, Ms. Clements covered an evening shift for another employee.

68. For some time, the Milford IHOP had experienced problems with sums of money under $100 going missing.

69. Text messages from Mr. Sunnadeniyage to Ms. Clements show that he was aware that a shift manager named Jessica Wiseman ("Ms. Wiseman") was the one stealing the money.

70. He never disciplined Ms. Wiseman or reprimanded her for this theft.

71. Company policy states that if money is missing during a shift, the shift manager is automatically presumed to be at fault.

72. The evening of Friday, March 22, 2019, Ms. Wiseman was the shift manager.

73. Ms. Wiseman was responsible for balancing the till after closing, and did not report any money missing for the night of March 22, 2019.

74. However, on March 30, 2019, when Ms. Clements went in for her shift, she was met by Mr. Mulson and Scott Costanza, another district manager, who informed her that she was being fired for stealing.

75. When Ms. Clements inquired as to how much was missing, she was told that $40.00 had been stolen.

76. Ms. Clements said she would never jeopardize her job over $40.00 and asked to see proof.

77. After trying to convince her that proof wasn't necessary, Mr. Mulson finally provided Ms. Clements with a grainy video on his cell phone, which showed her back to the camera, standing in front of the computer.

78. In the video, you cannot see Ms. Clements take any money from under the keyboard, nor place any money in her pocket, as she was accused of.

79. No explanation was given as to why money was being kept under the keyboard in the first place.

80. Friday, March 22, 2019, the day Ms. Clements was alleged to have stolen $40 despite Ms. Wiseman's report of a fully balanced closing till (and the company's automatic presumption of fault notwithstanding), was not only the day after Ms. Clements's meeting with Human Resources, but was also the very next shift Ms. Clements worked after Mr. Mulson's two attempts to ask her to open the store safe, presumably to create a scenario where he could frame Ms. Clements for theft.

81. As a result of her termination, Ms. Clements was evicted from her apartment, lost her car, and had to move in with her sister.

82. On information and belief, the issues with missing money continued after Ms. Clements's termination.

## COUNT I
### Unlawful Discrimination and Sexual Harassment in
### Violation of G.L. c. 151B, § 4(16A)

83. Complainant re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

84. By the conduct described above, Defendants condoned the existence of, and subjected Ms. Clements to, a sexually hostile work environment on an ongoing and continuous basis, that a reasonable person would not tolerate.

85. The sexual harassment described above, and Defendants' failure to take reasonable or appropriate measures to stop it, unreasonably interfered with Ms. Clements' work at the Milford IHOP by creating a hostile, humiliating, and sexually offensive work environment.

86. Defendants, through their supervisory employees, had actual knowledge of the sexual harassment Ms. Clements was suffering and the sexually hostile work environment she was subjected to.

87. Defendants not only failed to take reasonable or appropriate responsive measures to stop the harassment and eliminate the hostile atmosphere, but also never reported it to their supervisors or anyone else, and through their actions aided and abetted the continuation of the harassment.

88. As a result of Ms. Clements's multiple complaints to her superiors and human resources about the sexual harassment and hostile work environment, she was terminated.

89. Defendants' proffered reason for terminating Ms. Clements was mere pretext for its discriminatory motives.

90. IHOP Restaurants, Milford Pancakes, and Mr. Stax are each and all vicariously liable for the discriminatory actions/omissions of their employees, officers, and agents.

91. Ms. Clements has suffered actual pecuniary, emotional, and physical harm as a result of the actions and omissions of the Defendants.

92. Ms. Clements is entitled to all appropriate relief for the actions of IHOP Restaurants, Milford Pancakes, Mr. Stax, and its employees, officers, and agents.

## COUNT II
### Unlawful Retaliation in Violation of M.G.L. c. 151B, §4(4A)

93. Complainant re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

94. Under Massachusetts's law it is unlawful to interfere with another person in the exercise or enjoyment of any right granted under M.G.L. c. 151B.

95. Ms. Clements made several reports to her supervisors and eventually to Human Resources, both of Mr. Sunnadeniyage's inappropriate sexual harassment of her, Mr. Mulson's inaction when informed of the same, and of Ms. Bublos's impersonation of her in order to pass the food safety inspection.

96. Defendants unlawfully retaliated against Ms. Clements for her reporting of Defendants unlawful actions by reducing her hours, falsely accusing her of theft, and terminating her employment.

97. Defendants' proffered reason for terminating Ms. Clements is mere pretext.

98. IHOP Restaurants, Milford Pancakes, and Mr. Stax are vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents.

99. Ms. Clements has suffered actual pecuniary, emotional, and physical harm as a result of the actions/omissions of Defendants.

100. Ms. Clements is entitled to all appropriate relief for the actions of Defendants and their agents.

## COUNT III
### Unlawful Harassment and Hostile Work Environment in Violation of M.G.L. c. 151B

101. Complainant re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

102. Under Massachusetts Law, it is unlawful to subject an employee to a hostile work environment because of his/her protected class.

103. Ms. Clements is considered part of a protected class under Massachusetts and Federal law.

104. As described herein, Ms. Clements was subject to severe and pervasive hostile treatment from her co-workers and supervisors on the basis of her sex.

105. The severe and pervasive nature of the unwelcome comments and treatment from her co-workers and supervisors unreasonably interfered with Ms. Clements's work performance.

106. Defendants knew or should have known of the harassment Ms. Clements was receiving from his co-workers and failed to take reasonable steps to stop it.

107. In many cases, Ms. Clements's supervisors were the individuals harassing Ms. Clements on the basis of her sex.

108. The comments made by Ms. Clements's supervisors created a hostile work environment for Ms. Clements.

109. Under M.G.L. c. 151, employers are strictly liable for the harassing conduct of its supervisors.

110. IHOP Restaurants, Milford Pancakes, and Mr. Stax are vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents.

111. Ms. Clements has suffered actual pecuniary, emotional, and physical harm as a result of the actions/omissions of Defendants.

112. Ms. Clements is entitled to all appropriate relief for the actions of Defendants and its agents.

## COUNT IV
### Unlawful Retaliation in Violation of the Massachusetts Whistleblower Law
### M.G.L. c. 149 § 185

113. Complainant re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

114. Under Massachusetts Law it is an unlawful employment practice to take any retaliatory action against an employee because the employee discloses, or threatens to disclose, to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.

115. Ms. Clements made several reports to her supervisors and eventually to Human Resources, both of Mr. Sunnadeniyage's inappropriate sexual harassment of her, Mr. Mulson's inaction when informed of the same, and of Ms. Bublos's impersonation of her in order to pass the food safety inspection.

116. Defendants unlawfully retaliated against Ms. Clements for her reporting of Defendants' unlawful actions by reducing her hours, falsely accusing her of theft, and terminating her employment.

117. Defendants' proffered reason for terminating Ms. Clements is mere pretext.

118. IHOP Restaurants, Milford Pancakes, and Mr. Stax are vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents.

119. Ms. Clements has suffered actual pecuniary, emotional, and physical harm as a result of the actions/omissions of Defendants.

120. Ms. Clements is entitled to all appropriate relief for the actions of Defendants and their agents.

**COUNT V**
**Unlawful Discrimination on the Basis of Sex**
**In Violation of Title VII of the Civil Rights Act of 1964**

121. Complainant re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

122. As described herein, Ms. Clements was subject to severe and pervasive hostile treatment from her co-workers and supervisors on the basis of her sex.

123. The sexual harassment described above, and Defendants' failure to take reasonable or appropriate measures to stop it, unreasonably interfered with Ms. Clements' work at the Milford IHOP by creating a hostile, humiliating, and sexually offensive work environment.

124. Defendants knew or should have known of the harassment Ms. Clements was receiving from her co-workers and failed to take reasonable steps to stop it.

125. Defendants, through their supervisory employees, had actual knowledge of the sexual harassment Ms. Clements was suffering and the sexually hostile work environment she was subjected to.

126. In many cases, Ms. Clements's supervisors were the individuals harassing Ms. Clements on the basis of her sex.

127. After Ms. Clements reported to Mr. Mulson several incidents of sexual harassment perpetrated by Mr. Sunnadeniyage, Mr. Sunnadeniyage never scheduled Ms. Clements to manage the store when he was out, he never scheduled her as shift manager, and he began to drastically reduce her hours, all of which resulted in a severe reduction in Ms. Clements's income.

128. By the conduct described above, Defendants discriminated against Ms. Clements with respect to her compensation, terms, conditions, or privileges of employment, because of her sex.

129. IHOP Restaurants, Milford Pancakes, and Mr. Stax are each and all vicariously liable for the discriminatory actions/omissions of their employees, officers, and agents.

130. Ms. Clements has suffered actual pecuniary, emotional, and physical harm as a result of the actions and omissions of the Defendants.

131. Ms. Clements is entitled to all appropriate relief for the actions of IHOP Restaurants, Milford Pancakes, Mr. Stax, and its employees, officers, and agents.

## COUNT VI
## Unlawful Retaliation in Violation of Title VII of the Civil Rights Act of 1964

132. Complainant re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

133. Under Federal law it is an unlawful employment practice for an employer to discriminate against any of his employees because he or she has opposed any practice made an unlawful employment practice by Title VII, or because he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

134. Ms. Clements made several reports to her supervisors and eventually to Human Resources, both of Mr. Sunnadeniyage's inappropriate sexual harassment of her, Mr. Mulson's inaction when informed of the same, and of Ms. Bublos's impersonation of her in order to pass the food safety inspection.

135. Defendants unlawfully retaliated against Ms. Clements for her reporting of Defendants' unlawful actions by reducing her hours, falsely accusing her of theft, and terminating her employment.

136. Defendants' proffered reason for terminating Ms. Clements is mere pretext.

137. IHOP Restaurants, Milford Pancakes, and Mr. Stax are vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents.

138. Ms. Clements has suffered actual pecuniary, emotional, and physical harm as a result of the actions/omissions of Defendants.

139. Ms. Clements is entitled to all appropriate relief for the actions of Defendants and their agents.

### PRAYER FOR RELIEF

WHEREFORE, Complainant claims:

i. Damages in an amount to be determined at hearing including, *inter alia*, punitive damages, emotional distress, out-of-pocket expenses, lost wages, and other monetary loss;

ii. Costs and attorney's fees; and

iii. Such other legal or equitable relief as the Court may award.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

> Respectfully submitted,
> SARA CLEMENTS
> By her attorneys:
>
> */s/ Rebecca Royer*
> Emily E. Smith-Lee (BBO#634223)
> esmithlee@slnlaw.com
> Rebecca Royer (BBO#692337)
> SLNLAW LLC
> 46 South Main St.
> Sharon, MA  02067
> (781) 784-2322

Dated:     July 16, 2020